BERTRANG, Plaintiff in error, v. STATE, Defendant in error.

*No. State 169.   Argued March 4, 1971.—Decided March 30, 1971.*
(Also reported in 184 N. W. 2d 867.)

704

For the plaintiff in error there was a brief by *Arnold P. Anderson* and *Carroll, Parroni & Postlewaite,* all of Eau Claire, and oral argument by *Mr. Anderson.*

For the defendant in error the cause was argued by *Robert D. Martinson,* assistant attorney general, with whom on the brief were *Robert W. Warren,* attorney general, *William A. Platz,* assistant attorney general, and *Lawrence W. Durning,* district attorney of Eau Claire county.

WILKIE, J.  The pivotal issue on this review is whether an oral statement allegedly made by the victim to her mother the day after the event was hearsay, and if so, whether it was improperly received in testimony.

At trial Mrs. Bertrang was called by the state, and on cross-examination the following occurred:

"*Q.* Directing your attention to Saturday morning, after you talked to Tammy and discovered blood in her panties, did you discuss the blood with her? You can answer that 'Yes' or 'No.' *A.* No, I didn't discuss the blood.

"*Q.* Did you inquire as to whether or not something had happened? *A.* Yes.

"*Q.* Please answer this question 'Yes' or 'No,' did you ask her whether someone had done something to her? *A.* Yes.

"*Q.* When you asked her this, did you supply a name? *A.* Yes.

"*Q.* Did you say, 'Did Norm do something?' *A.* No, I said, 'Did your dad do something?'

"*Q.* You said, 'Did your dad do something?' *A.* Yes.

"*Q.* Had she at any time volunteered the name of the individual that did something? *A.* I don't know.

"The Court: I didn't hear that answer.

"Witness: I don't know."

The subject was not pursued any further by the defense.

On redirect examination, however, the state asked the following:

"*Q.* And when you talked to Tammy concerning the events, the conversation on Saturday morning, December 20th, you stated that you asked her, 'Did your dad do something' " *A.* Yes.

"*Q.* What was her answer?

"Mr. Hart: I object, Your Honor. I think this is hearsay testimony.

"The Court: Just a moment.

"Mr. Durning: I admit it is hearsay. I think counsel opened up the subject, however.

"The Court: I think he did. You may answer.

"*A.* Would you repeat it one more time, please?

"Mr. Durning: Would you please repeat the question, please, Miss Reporter?

" (Question read by reporter as follows: What was her answer?)

"*A*. She said 'Yes.'
"*Q*. No further questions."

This was hearsay testimony. As such it was improperly received unless it was admissible under an exception to the hearsay rule.

1. *Curative admissibility*. In its decision on defendant's motion after verdict, which motion embodied the same issue presented on this appeal, the trial court felt that the rule which was applicable is that of curative admissibility as recognized by this court in *Pruss v. Strube*.[1]

We question the applicability of the "curative admissibility" rule. The purpose of this rule is to "cure" some prejudice resulting to a party as the result of the presentation by the opposing party of evidence which is inadmissible. Here all of the testimony of Mrs. Bertrang was admissible. Defense counsel was careful to inquire only as to what Mrs. Bertrang said or knew. He cautioned her to answer each question only with a "Yes" or "No" answer. Only these answers were given.

2. *Res gestae*. But the statement was clearly admissible under the well-recognized exception which admits the statement made to a witness which is part of the *res gestae*. The key elements of this exception are contemporaneity and spontaneity.

In this case we have statements made by the victim on the second day following the alleged criminal acts, and made in response to questions from her mother, the witness testifying. In addition, the victim was nine years old and the victim of a sexual assault which was established by physical evidence. Such circumstances are often considered by courts in passing on the admission of assertions under the *res gestae* exceptions.[2] Courts generally take a broader and more liberal view of the *res gestae* exception when assertions of a young child are

[1] (1968), 37 Wis. 2d 539, 155 N. W. 2d 650.
[2] Annot. (1962), 83 A. L. R. 2d 1368.

involved, particularly when the child is the victim of a sexual assault or other traumatic experience.[3] We think *Bridges v. State*,[4] an early decision of this court, is especially in point. In *Bridges*, this court held that testimony of the mother of a seven-year-old child as to statements made by the child in response to questions of the mother, which statements indicated the defendant had taken indecent liberties with the child, were admissible. In *Bridges* this court adopted an exception to the hearsay rule related to *res gestae* but apparently conceptually independent thereof.[5] The court stated:

". . . The mother's testimony as to the statement of those particulars by Sharon was clearly admissible under the rule that where the person ravished is very young, testimony as to the particulars of such statements by her is admissible. *Hannon v. State*, 70 Wis. 448, 451, 452, 36 N. W. 1; *Bannen v. State*, 115 Wis. 317, 329, 91 N. W. 107, 91 N. W. 965; *Smits v. State*, 145 Wis. 601, 605, 606, 130 N. W. 525." [6]

Other courts have apparently merely eased the requirements of contemporaneity and spontaneity in admitting the statements under the *res gestae* exception.[7] Under such analysis, each case is considered on its particular facts, but the fact that the assertions are not made within a few minutes or even hours of the alleged assault is not controlling,[8] nor is the fact that they are not volunteered but made in response to questions.[9]

The reasons for such an exception to the hearsay rule are obvious. A young child may be unable or unwilling to remember (as here) all the specific details of the

---

[3] *Id.*

[4] (1945), 247 .Wis. 350, 19 N. W. 2d 529, 19 N. W. 2d 862.

[5] *See, e.g.*, Annot., *supra*, footnote 2, at page 1370.

[6] *Bridges, supra*, footnote 4, at page 363.

[7] Annot., *supra*, footnote 2.

[8] *See, e.g., State v. Simmons* (1968), 52 N. J. 538, 247 Atl. 2d 313.

[9] *See, e.g., In re Lewis* (D. C. App. 1952), 88 Atl. 2d 582.

assault by the time the case is brought to trial; or be unwilling to testify, or at least inhibited in doing so from a feeling of fear or shame, or as a result of the strangeness of the courtroom surroundings, particularly with a jury and perhaps members of the general public present. The desirability of avoiding the necessity of forcing a young child to testify to such matters at all has been noted,[10] particularly when the defendant is (as here) a parent or occupies some other close relationship to the child.

We conclude therefore that the testimony of the mother about the statements made to her by her nine-year-old daughter were admissible, in the discretion of the trial court, as an exception to the hearsay rule recognized in Wisconsin in *Bridges*.

Each case must be viewed on its particular facts and in exercising its discretion of whether to admit testimony about statements made by a child of similar age to the one here involved, the trial court should consider the age of the child, the nature of the assault, physical evidence of such assault, relationship of the child to the defendant, contemporaneity and spontaneity of the assertions in relation to the alleged assault, reliability of the assertions themselves, and the reliability of the testifying witness.

Although the trial court did not admit the testimony on this basis, defendant was not prejudiced, since it was admissible on these grounds.

*By the Court.*—Judgment and order affirmed.

---

[10] *State v. Boodry* (1964), 96 Ariz. 259, 394 Pac. 2d 196, certiorari denied, 379 U. S. 949, 85 Sup. Ct. 448, 13 L. Ed. 2d 546.