LOVE, Plaintiff in error, v. STATE, Defendant in error.

*No. State 183. Argued June 3, 1974.—Decided June 28, 1974.*
(Also reported in 219 N. W. 2d 294.)

434

For the plaintiff in error there was a brief and oral argument by *Patrick J. Devitt,* Legal Aid Society of Milwaukee.

For the defendant in error the cause was argued by *Christine M. Wiseman,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

BEILFUSS, J. The defendant argues (1) that the victim, a three-and-one-half-year-old child, was incompetent to testify and that the trial court should have, sua sponte, stricken her testimony; (2) that the court erred in allowing the mother to testify as to the hearsay statements made by the victim the morning after the incident upon the grounds the statements were hearsay and not a *res gestae* exception; and (3) that the evidence is insufficient to sustain the conviction beyond a reasonable doubt.

Before S———, the three-and-one-half-year-old victim, was permitted to take an oath and testify, a *voir dire* was conducted to determine her competency.[3] S——— was born on May 23, 1969; the events in question took place on November 18, 1972, and the trial was conducted on February 15 and 16, 1973.

In response to the *voir dire* questions propounded by the district attorney, S——— answered or affirmatively nodded her head giving her name and age, that she attended a nursery school, that she knew what it meant to tell the truth and that it was good to tell the truth, that she knew what it meant to tell a lie and that it was good to tell a lie (nodded affirmatively) and that if questions were asked she would tell the truth and would not tell a lie.

In response to questions by the trial judge, Mrs. Folks, S———'s mother, answered that S——— was truthful in all matters, and that she would tell the truth at the trial.

The trial judge inquired of defense counsel if he wanted to question the witness. The following appears in the record:

"*Court:* Do you want to ask her anything?

[Defense Counsel] "*Mr. Margolis:* You are talking about the mother?

"*Court:* Yes.

"*Mr. Margolis:* Has the little girl ever told you any lies?

"*Mrs. Folks:* Just when she is playing, yea.

"*Court:* When she is playing?

"*Mrs. Folks:* Right.

"*Mr. Margolis:* I have no questions.

"*Court:* All right. The Court will at this time give the child the oath. The Court will determine after hearing the said testimony of the child and her mother concerning this crime what weight ought to be given thereto.

"Is that acceptable, Mr. Margolis?

---

[3] *See* sec. 885.30, Stats.

"*Mr. Margolis:* That is acceptable.

"*Court:* S———, can you raise your right hand like this?

"*A.* Yea.

"*Court:* Will you?

"*A.* Yea.

"*Court:* Do you solemnly swear to tell the truth, the whole truth and nothing but the truth, so help you God?

"*A.* Yea."

S——— then testified, sometimes by verbal response and sometimes by nodding her head, that she knew Charlie Love; when asked to point to Charlie she pointed at the court reporter, but when she was asked to touch Charlie she walked over to the defendant and put her hand on his arm. She further testified she remembered being in bed with the defendant and that he put his hand between her legs, put his finger in her and hurt her.

It should be pointed out that all of S———'s answers were not responsive and many were inconsistent.

At no time did the defendant's counsel object to the competency of the witness nor was the question raised in motions after trial.

In *Collier v. State* (1966), 30 Wis. 2d 101, 140 N. W. 2d 252, we stated that when a *voir dire* is held to determine the competency of a witness the objection to the competency must be made before the witness takes the oath and gives testimony. We further stated at page 105:

" 'The rule that objection to the competency of a witness must be properly taken at the trial or it cannot be reviewed by this court is applicable where the alleged incompetency is due to infancy.' "

*Collier* also holds at page 106:

". . . This court has pointed out that a tender age is no bar to a determination of testimonial competency. All

that this jurisdiction requires is evidence of 'his ability to receive accurate impressions of the facts to which his testimony relates and to relate truly the impressions received. If he has this understanding and intelligence and appreciates the obligation to speak the truth, he is competent.' *Musil v. Barron Electrical Co-operative* (1961), 13 Wis. (2d) 342, 358, 108 N. W. (2d) 652. See Model Code of Evidence, p. 91, Rule 101, for similar tests.

" 'The question of competency rests largely in the sound discretion of the trial court, whose decision will not be disturbed in the absence of clear abuse . . . .' 97 C. J. S., Witnesses, p. 450, sec. 58."

In this case the defendant did not object to the competency of the witness until after sentencing. We have consistently held that unless an objection to the competency of a witness is raised during the trial the objection is waived. The objection to the competency of a witness should be raised before the testimony is given.[4]

Even though the defendant does not have standing to raise the issue of competency because of a failure to properly object, we will comment upon the matter.

Whether a witness is competent to testify is within the sound discretion of the trial court. The exercise of that discretion will not be disturbed upon appeal without a clear showing of an abuse of that discretion.

The testimony of S——— standing alone would not, in our opinion, be sufficient to sustain a conviction because of some inconsistencies, some unresponsiveness and the general lack of appreciation of the consequences of the testimony by a child three-and-one-half-years-old. However, this case was tried by an experienced trial judge without a jury. He, we are sure, well knows of the inaccuracies and false impressions that can permeate the testimony of such a witness because of the inability

---

[4] *Collier v. State, supra; Kiefer v. State* (1950), 258 Wis. 47, 44 N. W. 2d 537.

to make meaningful observations or comprehend the consequences of those observations, and that such a witness may be subject to suggestion and prompting of others. Here, the trial judge made it amply clear before S—— testified that he would reserve his evaluation of the weight to be given the child's testimony until after he had heard it and the testimony of her mother. A careful reading of the child's testimony leads us to a belief that S——'s testimony was credible and probative of the ultimate facts necessary to a conviction. The weight to be given this testimony, of course, did have to stand the challenge of the other credible evidence in the case.

We are of the opinion that the trial court did not abuse its discretion in receiving the testimony of S—— and that there was no duty to sua sponte strike it from the record.

The defendant next argues that the mother's testimony as to what S—— told her the next morning was hearsay and the objection to it should have been sustained.

In *Bertrang v. State* (1971), 50 Wis. 2d 702, 184 N. W. 2d 867, we considered this same issue. The defendant would have us distinguish *Bertrang* on its facts but we believe there is no meaningful distinction in the facts of both cases.

In *Bertrang* we stated at pages 706–708:

". . . the statement was clearly admissible under the well-recognized exception which admits the statement made to a witness which is part of the *res gestae*. The key elements of this exception are contemporaneity and spontaneity.

"In this case we have statements made by the victim on the second day following the alleged criminal acts, and made in response to questions from her mother, the witness testifying. In addition, the victim was nine years old and the victim of a sexual assault which was established by physical evidence. Such circumstances are often

considered by courts in passing on the admission of assertions under the *res gestae* exceptions. Courts generally take a broader and more liberal view of the *res gestae* exception when assertions of a young child are involved, particularly when the child is the victim of a sexual assault or other traumatic experience. We think *Bridges v. State,* an early decision of this court, is especially in point. In *Bridges,* this court held that testimony of the mother of a seven-year-old child as to statements made by the child in response to questions of the mother, which statements indicated the defendant had taken indecent liberties with the child, were admissible. In *Bridges* this court adopted an exception to the hearsay rule related to *res gestae* but apparently conceptually independent thereof. The court stated:

" '. . . The mother's testimony as to the statement of those particulars by Sharon was clearly admissible under the rule that where the person ravished is very young, testimony as to the particulars of such statements by her is admissible. *Hannon v. State,* 70 Wis. 448, 451, 452, 36 N. W. 1; *Bannen v. State,* 115 Wis. 317, 329, 91 N. W. 107, 91 N. W. 965; *Smits v. State,* 145 Wis. 601, 605, 606, 130 N. W. 525.'

Other courts have apparently merely eased the requirements of contemporaneity and spontaneity in admitting the statements under the *res gestae* exception. Under such analysis, each case is considered on its particular facts, but the fact that the assertions are not made within a few minutes or even hours of the alleged assault is not controlling, nor is the fact that they are not volunteered but made in response to questions.

"The reasons for such an exception to the hearsay rule are obvious. A young child may be unable or unwilling to remember (as here) all the specific details of the assault by the time the case is brought to trial; or be unwilling to testify, or at least inhibited in doing so from a feeling of fear or shame, or as a result of the strangeness of the courtroom surroundings, particularly with a jury and perhaps members of the general public present. The desirability of avoiding the necessity of forcing a young child to testify to such matters at all has been noted, particularly when the defendant is (as here) a parent or occupies some other close relationship to the child.

"We conclude therefore that the testimony of the mother about the statements made to her by her nine-year-old daughter were admissible, in the discretion of the trial court, as an exception to the hearsay rule recognized in Wisconsin in *Bridges*.

"Each case must be viewed on its particular facts and in exercising its discretion of whether to admit testimony about statements made by a child of similar age to the one here involved, the trial court should consider the age of the child, the nature of the assault, physical evidence of such assault, relationship of the child to the defendant, contemporaneity and spontaneity of the assertions in relation to the alleged assault, reliability of the assertions themselves, and the reliability of the testifying witness."

In this case the mother's testimony as to statements made by the child was admissible as a part of the *res gestae* or as described in the newly adopted code of evidence as an excited utterance.[5]

The defendant challenges the sufficiency of the evidence. We will not restate the evidence set forth above. From our review of the entire record we conclude, without hesitation, that there is ample credible evidence to sustain the conviction.

The defendant also argues that the evidence raises a reasonable doubt as to his guilt. We disagree. His contention that the child might have injured herself with a toy after she returned home has no basis or foundation in the evidence other than mere conjecture and even this is dissipated by the evidence. If the child had injured herself at home in her own bed the blood would have been in her bed at her home—the blood was in the bed in the defendant's home and was the bed which was being used by him and the child at the time of the outcry. He further claims his friend, Gabriel Jones, might have molested the child because Jones was in the living room where the child slept on the couch after the bedroom

---

[5] *See* sec. 908.03 (2), Stats., and comments as they appear in Wisconsin Rules of Evidence, 59 Wis. 2d Rp. 250 and Rp. 256.

incident. There is absolutely no evidence other than the presence of Jones to indicate he had anything to do with the child. Any thought he might have molested the child is based upon sheer conjecture and surmise. A reasonable doubt must arise from the credible evidence in the record or a want of sufficient evidence necessary to prove the essential elements of the crime. Here neither test is met.

*By the Court.*—Judgment affirmed.