STATE of Wisconsin,† Plaintiff-Respondent,

v.

David O. DWYER, Defendant-Appellant.

Court of Appeals

*No. 87–1031–CR. Orally argued November 30, 1987.—Decided February 9, 1988.*

(Also reported in 422 N.W.2d 121.)

† Petition to review pending. This petition was not disposed of at the time the volume went to press. Its disposition will be reported in a later volume.

452

For the defendant-appellant, there were briefs and oral argument by *John E. Tradewell,* assistant state public defender.

For the plaintiff-respondent, there was a brief and oral argument by *Paul Lundsten,* assistant attorney general.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J. David O. Dwyer (Dwyer) appeals his judgment of conviction for first-degree sexual assault, sec. 940.225(1)(d), Stats., and an order denying post-conviction relief, sec. 809.30(2)(b), Stats. The dispositive issue is whether in admitting the victim's out-of-court statements the trial court denied Dwyer's constitutional right of confrontation by finding the victim unavailable. Other issues are whether the trial court erred 1) by excluding evidence offered as relevant to the voluntariness and trustworthiness of his confession, and 2) by ruling *in limine* that, should Dwyer take the stand and testify to the reliability of his

confession, he could be cross-examined regarding sexual activity with his older sister. Because we conclude that the trial court violated Dwyer's constitutional right of confrontation by determining that the victim was unavailable, we reverse and remand for a new trial.

The undisputed facts contained in the record reveal the following. Anna Dwyer is the mother of David Dwyer and Linda Dwyer. Linda's three-and-one-half-year old daughter, A.F., spent a few days at Anna's home, where David also resided, in late May 1985. Linda next saw A.F. in church on Sunday morning, June 2, 1985. At church, A.F. did not sit down with the other children, saying she hurt and indicated that the pain was in her crotch area. That evening, when sorting through A.F.'s clothing, Linda saw a stain on A.F.'s nightgown. Upon questioning A.F. regarding the nature of this stain, A.F. said "blood mommy, David hurt me," and also mentioned two other names, Allen and Jerry. When Linda asked A.F. how it happened, A.F. said "David stuck something in my butt." Linda reported this information to the sheriff's department the next morning, June 3, 1985.

Later that day, Carol Abbuehl, a county protective service worker, interviewed A.F. The interview lasted approximately twenty minutes. During the interview, A.F. stated that "somebody tried to get something in my butt." When asked who did that, A.F. said "David . . . he is my mom's uncle." When asked if David put anything else in her butt A.F. replied "his undies and Allen's undies and both the undies." When asked whether Allen put something in her butt too she said:

A.F.: Yup. David did put something in my butt and only Allen put something in my butt and only Larry put something in my butt.

C.A. (Abbuehl): Who's Larry?

A.F.: Larry, him too live at Grandma's.

However, later in her statement, A.F. said that just David was present at the time of the assaultive conduct.

On June 5, 1985, Officers Alfred Lentz and Richard Miller brought Dwyer to the sheriff's department for questioning. During the questioning, Dwyer made a written confession that he sexually assaulted A.F. on June 2, 1985, and admitted having sexual intercourse with Linda during their adolescence.

At the pretrial suppression hearing, Dwyer argued that his confession was involuntary because it was coerced by police threats of incarceration. Dwyer testified that he was told by the police that if he did not give a signed confession he would be arrested, but that if he did make a confession he would be released and later summoned to court. Harry Newville testified that the officers had used similar tactics to force a burglary confession from him. The court denied the suppression motion, finding that the officers made no threats, either real or implied, to Dwyer.

At the beginning of trial, the state asked the court to find A.F. incompetent to testify and unavailable for purposes of the confrontation requirement. The trial court declared her incompetent as a witness after voir dire disclosed she did not know the difference between telling the truth and telling lies. The court ruled that because she was incompetent, she was unavailable and that her out-of-court statements could be admitted under the standards delineated in *Ohio v. Roberts,*

448 U.S. 56 (1980). During trial, both Linda and Abbuehl testified about their respective conversations with A.F. A.F. did not testify.

Also, at the beginning of trial, Dwyer moved *in limine* to exclude evidence of any prior sexual activity between himself and Linda, arguing that the incident was not relevant because it occurred when they were adolescents. The court granted Dwyer's motion, but provided that if Dwyer took the stand to deny the truthfulness of his confession, then the state could cross-examine him on his prior sexual activity with Linda, but would be limited solely to Dwyer's answers and prohibited from presenting extrinsic evidence on this incident.

The defense informed the court that it would call Newville regarding the police tactics and offered the suppression hearing transcript of Newville's testimony as an offer of proof. The court ruled that this evidence was inadmissible.

The defense called Anna Dwyer. She categorically denied that she had caught David doing anything wrong to A.F. She noted that David was "slow, has a learning problem," had been kept back in kindergarten, and was in special education classes until his graduation. She also testified that he is easily influenced by more intelligent people. When she was asked what reason David had given for signing the confession, the state objected on hearsay grounds and the court sustained the objection. The jury subsequently found Dwyer guilty of first-degree sexual assault, and the trial court denied postconviction relief. Dwyer now appeals.

Dwyer first argues that the trial court erred by admitting A.F.'s out-of-court statements. We agree. To

determine whether A.F.'s out-of-court statements can be admitted into evidence against Dwyer, the following analysis is required. The threshold question is whether the evidence is admissible as a hearsay exception under state law. *State v. Bauer,* 109 Wis. 2d 204, 215, 325 N.W.2d 857, 863 (1982). If not, the evidence is excluded. If so, we consider the confrontation issue. *Id.* In order to satisfy the confrontation clause, two criteria must be satisfied: 1) The declarant must be unavailable, and 2) the evidence must bear sufficient indicia of reliability. *State v. Drusch,* 139 Wis. 2d 312, 317, 407 N.W.2d 328, 330–31 (Ct. App. 1987).

■

We first determine whether A.F.'s statements were admissible as an exception to the hearsay rule under state law. The admission of evidence is within the discretion of the trial court. *State v. Fishnick,* 127 Wis. 2d 247, 257, 378 N.W.2d 272, 278 (1985). However, discretion contemplates factual findings based upon an examination of the evidence and the application of those facts to proper legal standards. *Id.* After making such determinations, the trial court may then decide to exercise its discretion whether to admit the evidence. We will find an abuse of discretion if the trial court's factual findings are unsupported by the evidence or if the court applied an erroneous view of the law. *After Hour Welding, Inc. v. Laneil Management Co.,* 108 Wis. 2d 734, 740–41, 324 N.W.2d 686, 690 (1982).

■

The trial court determined that A.F.'s statements to her mother and Abbuehl were excited utterances and admissible under sec. 908.03(2), Stats. In reaching its determination, the court took into consideration

the child's age, the circumstances in which the statements were made, and the length of time that elapsed between the alleged conduct and the statements. We conclude that the trial court did not abuse its discretion.

Section 908.03(2) provides in relevant part:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . . .
>
> (2) Excited utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

This court has construed this section as follows:

> This statute permits admission of a hearsay report at trial if the original statement related to a startling event and if the declarant made the statement while under the stress of excitement caused by the event. The exception is based upon spontaneity and stress, endowing such statements with sufficient trustworthiness to overcome the reasons for exclusion of hearsay. The underlying basis for this exception is that people instinctively tell the truth, but when they have time to stop and think, they may lie. The interval between the incident and the declaration is measured by the duration of excitement, rather than mere time lapse. A statement of a declarant whose condition at the time of declaration indicates that he is still under the shock of his injuries or other stress due to special circumstances will be admitted.

*State v. Padilla,* 110 Wis. 2d 414, 418–19, 329 N.W.2d 263, 266 (Ct. App. 1982) (citations omitted).

██

We apply a broad and liberal interpretation of what constitutes an excited utterance when young children are involved. *See State v. Gollon,* 115 Wis. 2d 592, 598, 340 N.W.2d 912, 915 (Ct. App. 1983); *Padilla,* 110 Wis. 2d at 419, 329 N.W.2d at 266. Wisconsin cases have consistently held that statements by young children are admissible even though these statements were not made immediately following the incident. *See, e.g., Love v. State,* 64 Wis. 2d 432, 219 N.W.2d 294 (1974) (three-and-one-half-year-old sexual assault victim made a statement the day following the incident); *Bertrang v. State,* 50 Wis. 2d 702, 184 N.W.2d 867 (1971) (nine-year-old victim made a statement one day after the rape). We are also mindful that each case must be viewed on its particular facts, and consideration must be given to a number of factors, including the age of the child and the contemporaneity and spontaneity of the alleged assertions in relation to the alleged assault. *See Bertrang,* 50 Wis. 2d at 708, 184 N.W.2d at 870.

██

Applying these principles to the undisputed facts, we conclude that the court did not err by concluding that A.F.'s statements were excited utterances. A.F. was three years old when she made the statements. A.F.'s statements to her mother occurred the day of the assault. A.F.'s statements to Abbuehl occurred the next day. These times are well within the time period that a young child's statements can be spontaneous. *Padilla,* 110 Wis. 2d at 421, 329 N.W.2d at 267.

Dwyer contends that because A.F.'s statements were in response to questioning, the statements were not excited utterances. Dwyer relies in part on *State v. Sorenson,* 135 Wis. 2d 468, 400 N.W.2d 508 (Ct. App.

1986), where this court concluded that a young child's statement was not an excited utterance in part because the statement was elicited during a lengthy interview with a social worker.

His argument is unpersuasive for several reasons. First, although A.F.'s statements that "David hurt me" were preceded by her mother's question about the stain, the mere use of such questioning is not fatal. *See Love,* 64 Wis. 2d at 435, 219 N.W.2d at 295. Second, A.F.'s statements that David tried to "get something in my butt" occurred almost immediately after beginning the interview with Abbuehl and was not in response to a leading statement. These facts are distinguishable from *Sorenson* where the child's statement was in response to a leading question that occurred an hour into the social worker's interview. *Id.* at 470, 400 N.W.2d at 509. Accordingly, the trial court did not abuse its discretion by ruling that A.F.'s statements were excited utterances and admissible as an exception to the hearsay rule under Wisconsin law.

Having concluded that A.F.'s statements were properly found to be excited utterances and therefore admissible under Wisconsin rules of evidence, we next determine whether A.F. was unavailable for purposes of Dwyer's confrontation rights.[1] The trial court determined that A.F. was unable to distinguish the

---

[1] This opinion was prepared and released before *State v. Sorensen,* 143 Wis. 2d 226, 421 N.W.2d 77 (1988). We note that in *Sorensen,* our supreme court upheld the trial court's ruling that the declarant was "unavailable" under sec. 908.04(1)(b), Stats., because it would have been futile for the declarant to testify. *Sorensen,* 143 Wis. 2d at 242 n. 8; 421 N.W.2d at 83 n. 8. In this case, the state does not contest that A.F. was unavailable under sec. 908.04, but rather argues that A.F. was unavailable on other grounds.

difference between telling the truth and telling lies. Based on this determination, the court concluded that she was incompetent to testify. The court reasoned that because A.F. was incompetent, she was unavailable under the analysis of a defendant's confrontation rights. *See Roberts,* 448 U.S. at 65–66.

We disagree with the court's conclusion that A.F. was unavailable for the purpose of determining whether Dwyer was denied his right of confrontation as guaranteed by the state and federal constitutions. Our conclusion that the court erred by making this determination is premised upon the following reasons, each of which will be discussed in detail: First, the court was not empowered to determine A.F.'s competency under Wisconsin law; second, A.F. was not unavailable under the provisions of sec. 908.04; and third, the underlying principles of the confrontation clause, as applied to this case, compel that A.F. testify in order that the jury may properly evaluate the weight and credibility of her testimony.

Wisconsin judges are no longer empowered to review a witness's competency. Prior to January 1, 1974, when the rules of evidence became effective, sec. 885.30, Stats., provided for the trial court to ascertain a witness's capacity to testify and to determine whether the witness understands the nature and obligations of the oath. This section was repealed, and the corresponding provision of the evidence code as it now exists provides "every person is competent to be a witness except as provided by ss. 885.16 and 885.17 or as otherwise provided in these rules."[2] Section 906.01, Stats.

[2]Sections 885.16 and 885.17 do not apply to the facts of this case.

The Judicial Council Committee's note explains the change's significance. The new rule's intention is to remove from judicial determination the question of competency and to submit the testimony to the jury so that it may assess its weight and credibility. Judicial Council Committee note to Rule 906.01, Stats.

Our supreme court has specifically found that the former questions of competency are now credibility issues to be dealt with by the trier of fact. *State v. Davis,* 66 Wis. 2d 636, 647, 225 N.W.2d 505, 510 (1975); *State v. Olson,* 113 Wis. 2d 249, 253, 335 N.W.2d 433, 436 (Ct. App. 1983). Because judges in Wisconsin are not empowered to review a witness's competency, the trial court erred by concluding that A.F.'s inability to distinguish between the truth and a lie rendered her incompetent to testify as a witness.[3]

A second reason supporting our conclusion that the trial court erred by declaring A.F. unavailable is found by examining sec. 908.04, which defines unavailability under Wisconsin law. Section 908.04 states in relevant part:

> (1) "Unavailability as a witness" includes situations in which the declarant:
> (a) Is exempted by ruling of the judge on the ground of privilege from testifying concerning the subject matter of his statement; or

---

[3]We acknowledge that there are a variety of cases from other jurisdictions in which a witness who has been determined incompetent was found to be unavailable within the meaning of that term for the purposes of analyzing the defendant's right of confrontation. In these instances, however, the issue of competency was one that the court was empowered to make by virtue of the law of that jurisdiction. *See, e.g., State v. Gregory,* 338 S.E.2d 110 (N.C. Ct. App. 1985); *State v. Daniels,* 380 N.W.2d 777 (Minn. 1986). This is not true in the State of Wisconsin.

(b) Persists in refusing to testify concerning the subject matter of his statement despite an order of the judge to do so; or

(c) Testifies to a lack of memory of the subject matter of his statement; or

(d) Is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity; or

(e) Is absent from the hearing and the proponent of his statement has been unable to procure his attendance by process or other reasonable means.

A.F. was not unavailable as set forth in the criteria established above. Therefore, under sec. 908.04, A.F. was available to testify.

Final support for our conclusion rests upon the underlying principles of the confrontation clause. Under both the state and federal constitutions, a defendant is generally guaranteed the right to confront any witness. U.S. Const. amend. VI; Wis. Const. art. I, sec. 7; *see State v. Lenarchick,* 74 Wis. 2d 425, 436, 247 N.W.2d 80, 87 (1976); *State v. Conley,* 141 Wis. 2d 384, 392, 416 N.W.2d 69, 72 (Ct. App. 1987). The confrontation clause envisioned:

[A] personal examination and cross-examination of the witness, in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, *but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.*

*Roberts,* 448 U.S. at 63–64 (emphasis supplied) (citation omitted).

463

Under the circumstances of this case, these underlying principles of the confrontation clause compel that A.F. testify. Here, A.F. was present in court and did testify in a hearing outside the presence of the jury. Her ability to tell the truth when she made her out-of-court statement was of vital importance in evaluating the truthfulness of her statements. Accordingly, the trial court's determination that A.F. was incompetent and therefore unavailable prevented the jury from properly evaluating the weight and credibility of her statements.

The state also argues that Dwyer waived his right to challenge the trial court's finding of unavailability. The record discloses that Dwyer did not object to the trial court's finding of unavailability and did not object to the introduction of A.F.'s out-of-court statements at trial.

Although the claim of a constitutional right may be deemed waived unless timely raised in the trial court, *State v. Marshall,* 113 Wis. 2d 643, 653, 335 N.W.2d 737, 617 (1983), we conclude that Dwyer did not waive this claim of error. Dwyer refused to stipulate to A.F.'s unavailability. The trial court was sufficiently apprised of Dwyer's objection to this determination to avoid any waiver claim. *See Hagenkord v. State,* 100 Wis. 2d 452, 468, 302 N.W.2d 421, 430 (1981).

We therefore conclude that the trial court erred by declaring A.F. to be unavailable and that such error violated Dwyer's right of confrontation as guar-

anteed by the federal and state constitutions.[4] Accordingly, Dwyer is entitled to a new trial. This conclusion removes the necessity to decide the other issues advanced in this appeal. However, because this case must be retried, we will briefly address these issues in an attempt to assist the trial court during the retrial.

■

Dwyer challenges three trial court evidentiary rulings. He first challenges the court's exclusion of Newville's testimony. Dwyer is in error. Newville was prepared to testify that these same officers who questioned Dwyer had questioned him on a different matter. He would have testified that these officers told him that, unless he made a statement, he would be arrested and jailed. The court determined that such evidence was not relevant because it fell short of establishing a habit or routine practice permitting the jury to conclude that the same representations were made during Dwyer's interrogation. The court's conclusion that a single incident six months before Dwyer's interrogation was insufficiently probative of habit or routine practice was not an abuse of its discretion. *See State v. City of La Crosse,* 120 Wis. 2d 263, 268, 354 N.W.2d 738, 740 (Ct. App. 1984). We therefore conclude that the trial court properly excluded Newville's testimony.

Dwyer also challenges the trial court's exclusion of Anna Dwyer's testimony concerning the reason he had given her for signing the confession. He contends that although these statements are hearsay, they are

---

[4]In so holding, we need not determine whether sec. 908.04 is the exclusive basis upon which a witness can be found unavailable. In addition, we note that the issues arising when a request for a child's out-of-court statements is made pursuant to sec. 967.04, Stats., are not presented in this case.

admissible as excited utterances under sec. 908.03(2). We disagree.

As we explained in our earlier discussion of the admissibility of excited utterances, spontaneity is one element that must be satisfied before a statement can be found to be an excited utterance. *Padilla,* 110 Wis. 2d at 421, 329 N.W.2d at 267. Significantly, because Dwyer is an adult, we do not apply a broad and liberal interpretation of what constitutes an excited utterance. Here, Dwyer's statements to Anna lacked spontaneity. The record shows that Dwyer's conversation with Anna occurred the same day as the confession and that after the confession, the police gave Dwyer a ride to a residence that was not his home. There is no indication when the conversation occurred that day. Assuming that Dwyer saw his mother immediately upon returning from the department, Dwyer would have had sufficient time to think about what he would tell his mother. Accordingly, the trial court did not abuse its discretion.

Finally, Dwyer challenges the trial court's ruling that should he take the stand and attack the reliability of his confession, the state could cross-examine him on his prior sexual activities with Linda, but could not bring in extrinsic evidence or other witnesses. The court reasoned that such a statement went to the truthfulness of the statement and was, therefore, relevant to whether Dwyer's statement was credible.

Evidentiary rulings are matters within the trial court's discretion that we accord deference upon review. *State v. Pharr,* 115 Wis. 2d 334, 343, 340 N.W.2d 498, 501–02 (1983). In determining the admissibility of such evidence, however, the court is re-

quired to balance the prejudice against its probative value. Section 904.03, Stats. While we need not determine whether the court erred by this ruling, we note the record does not show that the trial court balanced the probative value of Dwyer's prior sexual contact with his sister as it goes to the reliability of his confession against the prejudice that Dwyer would suffer by virtue of the admission of such evidence.

*By the Court.*—Judgment and order reversed and cause remanded.