STATE of Wisconsin, Plaintiff-Appellant,

v.

Derek W. LINDBERG, Defendant-Respondent.†

Court of Appeals

*No. 92-1704-CR.   Submitted on briefs March 1, 1993.—Decided March 16, 1993.*

(Also reported in 500 N.W.2d 322.)

†Petition to review denied.

334

For the plaintiff-appellant the cause was submitted on the briefs of *James E. Doyle*, attorney general and *Paul Lundsten*, assistant attorney general.

For the defendant-respondent the cause was submitted on the brief of *Ruth S. Downs*, assistant public defender of Madison.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J. The state appeals an order dismissing its criminal prosecution of Derek Lindberg, based upon the trial court's determination that the court commissioner's bindover was not supported by admissible evidence. The state contends the trial court erred by (1) reviewing the court commissioner's evidentiary rulings without deference, (2) concluding that the victim's out-of-court statements were inadmissible hearsay and (3) concluding that the evidence insufficiently supported the bindover. The state argues that while trial courts review the court commissioner's determination of probable cause de novo, the evidentiary decisions and findings of fact underlying the determination of probable cause are deferentially reviewed under an erroneous exercise of discretion standard. The state also argues that the three-year-old victim's out of court statements are admissible either as excited utterances under sec. 908.03(2), Stats., or under the residual hearsay exception contained in sec. 908.03(24). Because we conclude that a magistrate's evidentiary rulings at a preliminary hearing are reviewed under the erroneous exercise of discretion standard, the court commissioner properly exercised his discretion by determining that the victim's out-of-court statements were admissible as hearsay exceptions. We also conclude that the evidence sufficiently supported the bindover. The order is reversed.

In November 1991, Lindberg was charged with intentional sexual contact with a child under the age of thirteen, in violation of sec. 948.02(1), Stats. The facts, as reflected by testimony at the preliminary hearing, are as follows: In October 1991, Tammi DeMars was babysitting the victim, three-year-old Samantha E., at the apartment of DeMars' boyfriend, known as "Junior."

337

Lindberg, also known as "Fly," was at the apartment. Samantha's mother, Kathy E., and her cousin and close friend, Michelle Livingston, dropped Samantha off on their way to taking Livingston's son to the doctor. When they picked Samantha up, Livingston noticed that Samantha appeared withdrawn. They then drove over to Samantha's grandmother's house.

Approximately two hours later, after they picked up Samantha and arrived at Samantha's grandmother's house, Livingston heard Samantha crying in the bathroom. Kathy came out of the bathroom looking pale and frightened. When Livingston went in to see what was wrong, she noticed blood in Samantha's underwear. Samantha was still crying and appeared frightened and in pain. Livingston laid Samantha down on the floor, examined her vaginal area and noticed it was swollen, red and irritated.

Livingston then asked Samantha if she had fallen. Samantha replied that she had fallen in the car. When Livingston asked her again, Samantha replied that she had fallen on the curb. Kathy and Livingston decided to take Samantha to the emergency room.

They arrived at the emergency room shortly thereafter. When the doctor examined Samantha, the only other people in the room were Livingston and the nurse. During the examination, Livingston determined that the swelling in Samantha's vaginal area had decreased and that Samantha's hymen was torn.

Shortly after the examination, a social worker came into the room to talk to Samantha with an anatomically correct doll and Livingston left the room. When Samantha was unresponsive, Livingston went into the room to talk with Samantha. Livingston testified that Samantha became more relaxed and willing to talk when she entered the room. According to Livingston, the fol-

lowing exchange took place between her and Samantha: Livingston asked her who was at Junior's house while DeMars was babysitting her, and Samantha replied that DeMars, Junior and Fly were there. Livingston next asked if someone had touched her, and she responded affirmatively. Livingston then left the room so that the social worker could speak with Samantha alone.

Because Samantha was again unresponsive to the social worker, Livingston went back into the examination room. When asked where she had been touched, Samantha responded, "In my privates." Livingston asked her what was used to touch her, Samantha said, "He pushed his finger in my privates really hard." Livingston then held up two fingers and her thumb, and designated each as a person who was at Junior's house while Samantha was being babysat. When Livingston asked Samantha to point to the person who touched her, Samantha held onto Livingston's thumb, which had been designated as Fly. Livingston also testified that Samantha was frightened and whimpering while the doctor examined her, and repeatedly asked to go home.

Livingston was the only witness to testify at the preliminary hearing. After the hearing, the court commissioner found that Livingston's testimony concerning Samantha's statements to her was admissible. Based upon Livingston's testimony, the court commissioner found probable cause that Lindberg had sexually assaulted Samantha.

The circuit court conducted an independent review of the record and determined that Samantha's statements to Livingston were not admissible as excited utterances. Because the court commissioner's finding of probable cause was based upon those inadmissible statements, the circuit court reversed and dismissed the prosecution against Lindberg.

The state first argues that when a court commissioner is conducting a preliminary hearing under sec. 757.69(1)(b), Stats., the court commissioner's evidentiary rulings are deferentially reviewed by the trial court under the erroneous exercise of discretion standard.

The hearing officer at a preliminary hearing is designated as a magistrate whether the individual is a judge or a court commissioner. *See State v. Sauceda*, 163 Wis. 2d 553, 564, 472 N.W.2d 798, 802 (Ct. App. 1991); *Scott v. State*, 198 Wis. 192, 193–94, 223 N.W. 450, 451 (1929). We summarized the standard of review of a magistrate's determination of probable cause to bind over a defendant for trial after a preliminary hearing in *Sauceda*, 163 Wis. 2d at 566–67, 472 N.W.2d at 802–03, *rev'd on other grounds*, 168 Wis. 2d 486, 485 N.W.2d 1 (1992):

> The focus of a preliminary hearing is to ascertain whether the facts and the reasonable inferences drawn therefrom support the conclusion that the defendant probably committed a felony. A reviewing court plays a limited role in reviewing a magistrate's finding of probable cause at a preliminary hearing. A reviewing court examines the evidence only sufficiently to discover whether there was any substantial ground for the exercise of judgment by the committing magistrate. Where a trial court reviews the magistrate's decision, the court must apply the same test for review as would the appellate court. Upon appellate review . . . we owe no deference to the trial court's determination. (Citations omitted.)

Thus, the issue whether the evidence before the magistrate supports a finding of probable cause is a question of law that we and the reviewing trial court review independently to determine whether substantial evi-

dence exists to support the magistrate's determination. *Id.* However, this holding does not specifically address the scope of review of the magistrate's decision to admit hearsay evidence. We conclude that when a court commissioner sits as a magistrate, evidentiary rulings are reviewed by appellate and trial courts under an erroneous exercise of discretion standard.

We note that both trial judges and court commissioners are empowered by statute to conduct preliminary hearings to determine the existence of probable cause. *See* sec. 757.69(1)(b), Stats. Our supreme court held in *State v. Sorenson*, 143 Wis. 2d 226, 240, 421 N.W.2d 77, 82 (1988), that appellate courts review circuit court evidentiary rulings at a preliminary hearing under the erroneous exercise of discretion standard. As long as the lower court's determination that the evidence is admissible is based upon a reasoned application of the proper legal standards to the facts, we will uphold that determination. *Id.* Appellate courts review trial court determinations that evidence is admissible as a hearsay exception with deference because the trial court "is best situated to weigh the reliability of the circumstances surrounding the declaration." *State v. Brown*, 96 Wis. 2d 238, 245–46, 291 N.W.2d 528, 532–33 (1980). We find no compelling reason to apply a different standard of review merely because the person presiding over the preliminary hearing is a court commissioner and not a judge. Indeed, the reason underlying a deferential standard of review when a judge sits as a magistrate applies equally to a court commissioner acting in that capacity. Because both sit as magistrates with the same power at preliminary hearings, the decisions of judges and court commissioners should be reviewed under the same standard.

341

Therefore, on review, a trial court or appellate court reviewing a court commissioner's determinations of admissibility of evidence at a preliminary hearing will uphold those determinations absent an erroneous exercise of discretion. Reviewing courts then determine whether the properly admitted evidence, if believed, would permit a reasonable magistrate to conclude that the defendant probably committed a felony. This determination is made independently of the magistrate's determination of probable cause. *Sauceda,* 163 Wis. 2d at 566, 472 N.W.2d at 803.

Next, we determine whether the court commissioner in this case erroneously exercised its discretion by determining that Samantha's statements at the hospital to Livingston were properly admissible either as excited utterances or under the residual hearsay exception. First, we note that the court commissioner did not express with specificity the grounds for overruling Lindberg's objections as to the admissibility of the statements. However, in the absence of specific findings, we assume findings were made that support the ruling, *State v. Wilks,* 117 Wis. 2d 495, 503, 345 N.W.2d 498, 501 (Ct. App. 1984), and will affirm the determination if it is supported by the preponderance of the evidence, *see State v. Williams,* 104 Wis. 2d 15, 22, 310 N.W.2d 601, 605 (1981). Therefore, we assume the court commissioner found that the statements were admissible either as excited utterances or under the residual hearsay exception in sec. 908.03(24), Stats.

Section 908.03, Stats., provides in part,

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

(2) . . . A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

Our supreme court outlined the prerequisites of admissibility under the excited utterance hearsay exception as it applies to children alleged to have been victims of sexual assault in *State v. Moats*, 156 Wis. 2d 74, 97, 457 N.W.2d 299, 309 (1990):

> The excited utterance exception to the hearsay rule is based in the spontaneity of the statements and the stress of the incident which endow the statements with the requisite trustworthiness necessary to overcome the general rule against admitting hearsay evidence. . . . "[T]ime is measured by the duration of the condition of excitement rather than mere time elapse from the event or condition described." Statements made by a declarant will be admitted where indications are that he or she is still under shock of injuries or other stress due to special circumstances. A broad and liberal interpretation governs the excited utterance exception as applied to young children because such children will tend to repress the stressful incident, will report the incident only to the mother and will be less likely than adults to consciously fabricate the incident over a period of time. (Citations omitted.)

The dispute over the admissibility of Samantha's statements at the hospital to Livingston concern whether (1) Samantha's statements were spontaneous and (2) whether Samantha was still under the shock of her injury or other stress due to special circumstances when she made those statements. Lindberg argues that because Samantha's statements implicating him were brought about by Livingston's suggestive interrogation, they were not spontaneous. He further argues that at the

343

hospital, Samantha's stress was caused by her fear of the doctor and was unrelated to her injuries.

Regarding spontaneity, our supreme court held in *Bertrang v. State*, 50 Wis. 2d 702, 707, 184 N.W.2d 867, 870 (1971), that the fact that the statements were not volunteered but were in response to questions is not controlling. In *Bertrang*, the court held that a nine-year-old girl's statements to her mother two days after the sexual assault allegedly occurred were admissible under the excited utterance exception. The girl's statements were responses to her mother's question, "Did your dad do something?" Although this question strongly suggested the mother's suspicion that the girl's father was responsible for the blood in the girl's underwear, the supreme court held that the girl's affirmative response to the question was admissible.

We conclude that the magistrate's determination that Samantha's responses to Livingston's questions were admissible was a proper exercise of discretion. Here, although Livingston's questions may have reflected her suspicion that Samantha had been sexually assaulted at her babysitters' apartment, her questions, in light of all the evidence, are not so unduly suggestive as to render Samantha's answers untrustworthy for lack of spontaneity. Unlike the mother in *Bertrang*, Livingston did not immediately ask Samantha, "Did Fly touch you?" Samantha was first asked whether someone touched her; when she responded affirmatively, Livingston gave her three choices concerning the identity of the person who touched her.

Lindberg makes much of the fact that Livingston apparently rejected Samantha's two prior explanations for her injuries, namely that she fell in the car or on the

curb during a walk with her mother. However, Livingston testified that the reason she continued questioning Samantha about her injuries was that she had personal knowledge that the explanations were false. Livingston testified that while Samantha was in the car with her, Samantha was buckled in and could not have fallen. Also, Livingston stated that she knew that Samantha and her mother had not gone for a walk that day; they had been in the house together until Kathy and Livingston took another child to the doctor. Livingston was not required to accept explanations that she knew were false. Further, we noted in *State v. Padilla*, 110 Wis. 2d 414, 421, 329 N.W.2d 263, 267 (Ct. App. 1982), that sexual assault is an event that a child would naturally wish to repress. One form of repressing such an event is to attempt to claim the resultant injuries were caused some other way. The magistrate correctly concluded that Samantha's statements to Livingston were sufficiently spontaneous such that they possessed trustworthiness justifying their admission under a hearsay exception.

Next, Lindberg argues that Samantha's statements were not excited utterances because at the time she made the statements she was not under stress due to her injuries. Lindberg contends that Samantha's stress at the hospital was due to her fear of the doctor and desire to go home rather than her injuries. He also suggests that Livingston's testimony that Samantha appeared to relax and talk more openly once the social worker left demonstrates that Samantha was no longer upset. We agree that competing reasonable inferences can be drawn concerning the source of Samantha's anxiety while she was at the hospital. However, the inference that the source of Samantha's stress was her injuries is implicit in the court commissioner's decision to overrule Lindberg's

objection to admissibility based upon a similar argument. When the evidence supports two competing inferences, we are bound to accept the inference supporting the magistrate's conclusion. *See State v. Friday*, 147 Wis. 2d 359, 370-71, 434 N.W.2d 85, 89 (1989). We are without power to choose a different inference when the inference drawn is reasonable. *Id.* We conclude that the inference that Samantha's stress was caused by her vaginal injuries and the alleged sexual assault is reasonable.

Further, we noted in *Padilla*, 110 Wis. 2d at 421, 329 N.W.2d at 267, that the fact that the victim's repressed statement only came out after prodding by her mother indicated that the victim was still under stress from her vaginal injuries. We therefore defer to the court commissioner's implicit finding that Samantha was still under the stress from her vaginal injuries when she made her statements to Livingston in the hospital.

Based upon our conclusions that Samantha's responses to Livingston's questions were sufficiently spontaneous, were made while Samantha was still under the stress of her injuries and the alleged sexual assault and possess other indices of trustworthiness, we conclude that the court commissioner properly exercised his discretion when it determined that the statements were admissible under the excited utterance exception to the hearsay rule. We therefore need not address whether Samantha's statements were admissible under the residual hearsay exception contained in sec. 908.03(24), Stats.

We held in *Sauceda*, 163 Wis. 2d at 566-67, 472 N.W.2d at 802-03, that our role in reviewing a magistrate's probable cause is limited to determining whether the facts and inferences drawn therefrom support the

determination of probable cause. Our supreme court ruled in *Sorenson*, 143 Wis. 2d at 251, 421 N.W.2d at 87, that reviewing courts need only determine the existence of evidence that, if believed, would permit a reasonable person to conclude that the defendant committed a felony.

We conclude that Samantha's statements, coupled with the evidence concerning her physical symptoms, and that Lindberg was present at Junior's house while DeMars was babysitting Samantha, if believed, would permit a reasonable person to conclude that Lindberg committed a felony. We therefore reverse the trial court's order dismissing the prosecution against Lindberg and reinstate the court commissioner's finding of probable cause sufficient to bind over Lindberg for trial.

*By the Court.*—Order reversed.