STATE of Arkansas *v.* Thurman ABERNATHY

CR 78-146                                      577 S.W. 2d 591

Opinion delivered March 5, 1979
(In Banc)

*Bill Clinton,* Atty. Gen., by: *Ray Hartenstein,* Asst. Atty. Gen., for appellant.

*Jack Holt, Jr.* and *Junius Bracy Cross, Jr.,* for appellee.

GEORGE ROSE SMITH, Justice. The appellee, Thurman Abernathy, was charged with having murdered Linda Edwards on August 22, 1976. (The record leaves some doubt as to the year, whether it was 1976 or 1977, but apparently 1976 is correct, for the information was sworn to and filed in July of 1977.) The case has not yet been tried. This is an appeal by the State from an interlocutory order holding that certain evidence to be adduced by the State at the trial would be inadmissible. See Rule 36.10 of the 1976 Rules of Criminal Procedure.

Defense counsel filed a preliminary motion asking that the testimony of several witnesses for the State be declared to be inadmissible, primarily under the hearsay rule. The State contended that the testimony is admissible under Rule 803 (3) of the Uniform Rules of Evidence. Ark. Stat. Ann. § 28-1001 (Supp. 1977). After a hearing the court held all the testimony proffered by the State to be inadmissible.

We begin our discussion with Rule 803 (3) itself, which provides:

Rule 803. Hearsay rule. — Availability of declarant immaterial. — The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

* * * * *

(3) Then existing mental, emotional, or physical condition. A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition, such as intent, plan, motive, design, mental feeling, pain, and bodily health, but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

This rule was copied from Federal Rule of Evidence 803 (3), which in turn was evidently designed to continue in effect the decisions of the United States Supreme Court in *Mutual Life Ins. Co.* v. *Hillmon,* 145 U.S. 285 (1892), and *Shepard* v. *United States,* 290 U.S. 96 (1933). In *Hillmon* the court upheld the admissibility of letters written by one Walters, who wrote in one letter: "I expect to leave Wichita [Kansas] on or about March the 5th, with a certain Mr. Hillmon." The court held that the letters were admissible to show that Walters had the intention of leaving Wichita and that therefore a body found several days later at Crooked Creek, Kansas, might have been that of Walters. From the opinion:

The letters . . . were competent, not as narratives of facts communicated to the writer by others, nor yet as

proof that he actually went away from Wichita, but as evidence that, shortly before the time when other evidence tended to show that he went away, he had the intention of going, and of going with Mr. Hillmon, which made it more probable both that he did go and that he went with Hillmon, than if there had been no proof of such intention.

At common law we reached a similar conclusion, holding to be admissible the decedent's statement on the day he was killed that he had started to Ravana to see the defendant about a bill of lumber. *Sullivan* v. *State,* 171 Ark. 768, 286 S.W. 939 (1926), clarified in *Hill* v. *State,* 255 Ark. 720, 502 S.W. 2d 649 (1973).

In *Shepard,* the second decision by the United States Supreme Court, it was held that a statement about a past event, "Dr. Shepard has poisoned me," was not admissible. The court explained the distinction:

Declarations of intention, casting light upon the future, have been sharply distinguished from declarations of memory, pointing backwards to the past. There would be an end, or nearly that, to the rule against hearsay if the distinction were ignored.

The testimony now questioned faced backward and not forward. This at least it did in its most obvious implications. What is even more important, it spoke to a past act, and more than that, to an act by someone not the speaker.

It will be seen that Uniform Rule 803 (3) states the substance of the rules laid down in *Hillmon* and *Shepard.*

In the case at bar the information alleged that Abernathy murdered Linda Edwards with a blunt instrument on August 22. Apparently the State meant to make its case by circumstantial evidence. The State sought to show, among other things, that Linda had expressed her intention to see Abernathy on the preceding night, before her death. To that end, at the hearing on defense counsel's preliminary motion

to declare the testimony inadmissible, the State proffered the testimony of Sara Edwards (no relation to the victim). The trial judge held all of Sara's testimony to be inadmissible.

Sara testified that she had known Linda for four years. During the last three of those years Linda had repeatedly said she was in love with Abernathy (who was married) and had a sexual relationship with him. Before her death Linda told Sara that she was pregnant and thought Abernathy was the father of her child. Linda said that Abernathy wanted her to have an abortion, but she didn't want to. Linda had three appointments for an abortion, but she canceled all of them and finally said that the baby had just as much right to live as any other baby.

Sara testified that Linda told her, on the Thursday before her death, that she and Thurman Abernathy had had a big fight at a parking lot. Sara went on to testify that she saw Linda twice on the final Saturday night before Linda's death. We quote her proffered testimony, which begins with the first of the two visits on Saturday night.

> [Linda] was very mad, very mad, but she was calm, cool mad type, determined mad is I guess the way you would describe it. And she said that she was going to get it straightened out one way or the other that night.
>
> Q. Straightened out with who?
>
> A. With Thurman, and she said, "If he doesn't satisfy me I will walk right up to the front door and tell Judy about it." She said, "He is either going to divorce her and marry me or I am going to see a lawyer Monday morning and have my name changed to Abernathy." She was very determined. I tried to talk her out of it. I told her she was a foolish girl for doing this. I said, "Be careful." And she kept saying, "Thurman won't hurt me. He won't hurt me." I said, "Linda, that's like backing a tiger into a corner." So she left and came back around eleven o'clock. I was asleep. My children were still up watching T.V. She was in my bathroom, and my kids came and got me and told me she was in there. So,

when I walked in, I said, "Have you talked to Thurman?" She said, "Yeah, I did." She said that he said he had a couple of people to take care of and then he said, "I knew this was going to happen. I knew this was going to happen." He said, "When I get these people taken care of I will see you." I said, "Linda, be careful. Whatever time you get through talking to him, you call me." And that's the last time I talked to her.

For the most part Linda's quoted declarations are inadmissible as being statements of her memory about the past, not statements of an existing state of mind. In that category fall the statements that her relationship with Thurman was sexual, that she thought him to be the father of her child, and that she had canceled appointments for an abortion. Also inadmissible, as hearsay, were Linda's repetitions of what Abernathy had said, such as his statement that he would see Linda after he had taken care of the two people.

In a proper setting, Linda's statement that she was pregnant might be admissible as a statement of physical condition. But in the absence of proof indicating that Thurman might have been the father of Linda's child, the bare statement would not be relevant to any issue in the case. It would be futile for us to speculate about the possibilities that might arise if the case is brought to trial. There is, of course, also the possibility that the evidence, although relevant, might be inadmissible under Uniform Rule 403.

In any event, the trial court should have sustained the admissibility of Linda's statement that she was going to meet Thurman that night. That statement falls within Rule 803 (3) and is in fact similar to the proof found admissible in *Hillmon*. That the statement may also show that Thurman was going to meet Linda does not, under the majority view, render it inadmissible. See *People* v. *Alcalde*, 24 Cal. 2d 177, 148 P. 2d 627 (1944). On the other hand, Linda's statements when she visited Sara for the second time that night are not admissible, as they were primarily repetitions of what Thurman had said, not statements about Linda's own state of mind.

For the error indicated the judgment is reversed and the cause remanded for further proceedings.

HOLT, J., not participating.