John Antonio COLE aka Tony Cole *v.* STATE of Arkansas

CR 90-305                                    818 S.W.2d 573

Supreme Court of Arkansas
Opinion delivered October 28, 1991

*Keith N. Wood*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Gil Dudley*, Asst. Att'y Gen., for appellee.

JACK HOLT, JR., Chief Justice. On August 28, 1990, the appellant, John Antonio Cole aka Tony Cole, was convicted of rape and carnal abuse in the second degree and sentenced as an habitual offender to forty years and ten years, respectively, in the Arkansas Department of Correction with the sentences to be

served consecutively.

Cole alleges six points of error on appeal: 1) that the trial court erred in denying his motion for a directed veredict on the charge of rape, 2) that the evidence on the element of forcible compulsion was insufficient to support a conviction of rape, 3) that the trial court erred in denying his motion to suppress the introduction of evidence of HSV2 testing as the resulting prejudice outweighed its probative value in violation of A.R.E. 403, 4) that the trial court erred in admitting hearsay testimony that was not admissible as an excited utterance exception under A.R.E. 803(2), 5) that the trial court improperly applied the state of mind exception to the hearsay rule under A.R.E. 803(3), and 6) that the trial court improperly permitted the introduction of hearsay testimony because it was not offered to rebut an implied charge of recent fabrication.

## SUFFICIENCY OF THE EVIDENCE

Cole asserts in his first and second points of error that the trial court erred in denying his motion for a directed verdict on the charge of rape and that the evidence on the element of forcible compulsion was insufficient to support a conviction of rape. However, he did not make a motion for a directed verdict at the close of the case.

Arkansas R. Crim. P. 36.21(b) provides:

> Failure to Question the Sufficiency of the Evidence. When there has been a trial by jury, the failure of a defendant to move for a directed verdict at the conclusion of the evidence presented by the prosecution and at the close of the case because of insufficiency of the evience will constitute a waiver of any question pertaining to the sufficiency of the evidence to support the jury verdict.

The sufficiency of the evidence issues raised in points 1 and 2 were thus waived by Cole's failure to move for a directed verdict at the close of the case, and we decline to consider these issues on appeal. *Andrews* v. *State*, 305 Ark. 262, 807 S.W.2d 917 (1991) (citing *Thomas* v. *State*, 303 Ark. 210, 795 S.W.2d 917 (1990) and *Houston* v. *State*, 299 Ark. 7, 771 S.W.2d 16 (1981)).

## SUPPRESSION OF EVIDENCE OF HSV2 TESTING

As a third point, Cole argues that the trial court erred in denying his motion to suppress the introduction of evidence of HSV2 testing as the resulting prejudice outweighed its probative value in violation of A.R.E. 403. Rule 403 states that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

The balancing of probative value against prejudice is a matter left to the sound discretion of the trial judge, and his decision on such a matter will not be reversed absent a manifest abuse of that discretion. *Bennett* v. *State*, 297 Ark. 115, 759 S.W.2d 799 (1988).

Although the established rule is that corroboration is not required in a rape case, *Lackey* v. *State*, 283 Ark. 150, 671 S.W.2d 757 (1984), we held in *Brewer* v. *State*, 269 Ark. 185, 599 S.W.2d 141 (1980), that the trial court properly allowed articles of the defendant's clothing to be introduced into evidence together with testimony that there were human bloodstains on the clothing where this evidence tended to corroborate the testimony of the rape victim, the police officers, and the medical examiner.

In this case, Cole emphasizes the inconclusive nature of the HSV2 (genital herpes) test results. However, Dr. Michael Young testified that Cole's HSV2 antibody IGG tested positive and that "[b]ased on the lab reports that I saw, and having not examined him [when he had herpes lesions], I can say that probably, he had HSV2 some time in the past."

Dr. Young further testified that the victim had been a patient of his for two and one half years. In October 1989, he had examined the victim during her annual physical checkup, and she had not exhibited any symptoms of the disease. The incident occurred later that month, on October 22, and Dr. Young examined the victim again as a result of the victim's allegation. Based on his examinaiton of the victim, her medical history, and positive HSV2 test results at that time, he determined that the victim had contracted genital herpes around the end of October

1989. As in *Brewer* v. *State, supra,* this evidence tended to corroborate the testimony of the rape victim, whose credibility had been placed into question by Cole, and the trial court's admission of this evidence was not a manifest abuse of discretion.

## EXCITED UTTERANCE EXCEPTION TO HEARSAY RULE

In his fourth point of error, Cole contends that the trial court erred in admitting hearsay testimony that was not admissible as an excited utterance exception under Rule 803(2). That rule provides that "[t]he following are not excluded by the hearsay rule, even though the declarant is available as a witness: . . . (2) Excited utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

We have recently held, in *Smith* v. *State*, 303 Ark. 524, 798 S.W.2d 94 (1990), that where a three-year-old declarant witnessed the brutal murder of his aunt, was returned home by the murderer about three hours later before his mother got home, slept fitfully and cried and screamed during the night, and made the statement when he first fully awoke the next morning, and where the declarant was crying and frightened when he told his mother what had happened, the trial court did not err in ruling that the child's statement to his mother, and later to police, was admissible as an excited utterance under Rule 803(2). In that case, we listed numerous citations from other jurisdictions that expanded the time interval between an exciting event and an out-of-court statement when the declarant is a child and recognized the considerations summarized in *United States* v. *Iron Shell*, 633 F.2d 77 (8th Cir. 1980):

> The lapse of time between the startling event and the out-of-court statement although relevant is not dispositive in the application of 803(2). Nor is it controlling that the [declarant's] statement was made in response to an inquiry. Rather, these are factors which the trial court must weigh in determining whether the offered testimony is within the 803(2) exception. Other factors to consider include the age of the declarant, the physical and mental condition of the declarant, the characteristics of the event and the subject matter of the statements. In order to find

that 803(2) applies, it must appear that the declarant's condition at the time was such that the statement was spontaneous, excited or impulsive, rather than the product of reflection and deliberation. [Citations omitted.]

Here, the mentally retarded twenty-three-year-old victim was described by Dr. Young as having the mental capacity of a six or seven year old child. The victim's teacher credited her with academic skills of an eight to eleven year old child. Thus, we have no problem in applying the rationale of our holding in *Smith* v. *State*, *supra*, to the facts of this case.

The victim lived in a home for adults with mental disabilities, and the incident occurred on a Sunday afternoon in the victim's room at the home. The following morning in class, the victim began talking very loudly to herself about the incident. Her teacher "whisked" her out of the classroom and took her to the program coordinator, who noted that she was frightened and upset. The administrator for the home was also informed of the incident. The victim told the three women at that time that Cole had told her not to tell that he had come into her room and wanted to play tricks. All three of the women testified that the victim was upset and excited when she told them of the incident.

At that time, the three women were not aware that the victim had been physically abused by Cole. It was not until Thursday night that the victim burst into the program coordinator's office and excitedly told her the rest of the story that Cole had placed his penis inside her buttocks and "taken her temperature." However, the emotional condition of the victim is unknown during the interval from her initial reporting of the incident on Monday until the following Thursday, four days after the incident.

The program coordinator testified as follows:

Q   What did [the victim] tell you that Wednesday night?

A   Thursday night. This was my night at the home. She told me basically, the same story she had on Monday, but she began to tell what I believe is the rest of the story. She indicated that there had been some genital contact. That she was told not to tell. That it hurt. I asked her if she asked him to stop and she said, 'I did, but he just kept on.'

■ Given the mental faculties of the victim and her excited and upset condition on the morning following the incident when she first spoke of the incident, we find that the three women's testimony about what the victim told them on Monday morning comes within the excited utterance exception to the hearsay rule encompassed in Rule 803(2).

We do not, however, stretch the exception to cover the victim's statements made on Thursday. In *Smith* v. *State, supra*, we noted that "the interval between a statement and an event is governed by the particular circumstances of each case. 'The general rule is that an utterance following an exciting event must be made soon enough thereafter that it can reasonably be considered a product of the stress of the excitement, rather than of intervening reflection or deliberation.' " D. Binder, Hearsay Handbook § 2.03 (1983). Continuing emotional or physical shock and loss of consciousness, unabated fright, isolation and other factors may also prolong the time, "making it proper to resort to Rule 803.(2), despite long lapses of time". *Smith* v. *State, supra* (quoting 4 D. Louisell, Federal Evidence § 439 (1980).

A rationale for relaxing the general rule was stated in *People in Interest of O.E.P.*, 654 P.2d 312 (Colo. 1982) as follows: "The element of trustworthiness underscoring the excited utterance exception, particularly in the case of yound children, finds its source primarily in the 'lack of capacity to fabricate rather than the lack of time to fabricate.' " Citing to Fed. R. Evid. 803(2) Advisory Committee Note.

While we cast no aspersions on the veracity or credibility of the victim's statements made four days after the incident, we are unable to except them from the hearsay rule under the excited utterance exception. The record is devoid of any evidence as to the victim's emotional state during the lapse of time between the victim's excited utterances on Monday and her further declarations made on the following Thursday. There has been no showing that the victim was under continuing emotional shock, suffered from unabated fright, or remained in a state of excitement and agitation during this interval. Furthermore, there has been no showing that a person of the victim's diminished mental capacities lacked the capacity to fabricate. The only facts we have before us are that the victim made two complaints and there was

an unexplained three day interval between them.

■ For these reasons, we cannot assume or say that the declarant's utterances on Thursday following the Sunday incident can reasonably be considered a product of the stress of the excitement, rather than of intervening reflection and deliberation.

## STATE OF MIND EXCEPTION TO THE HEARSAY RULE

Furthermore, these latter statements are not admissible as a state of mind exception under Rule 803(3), Cole's fifth point of error. Rule 803(3) provides as follows:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> * * * *
>
> (3)   Then existing mental, emotional, or physical condition. A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition, such as intent, plan, motive, design, mental feeling, pain, and bodily health, but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

■ The three women's testimony of what the victim said four days after the incident about what Cole did to her in her room is inadmissible as being statements of the victim's memory about the past, not statements of her then-existing state of mind. *See State v. Abernathy*, 265 Ark. 218, 577 S.W.2d 591 (1979).

## REBUTTAL TO AN IMPLIED CHARGE OF RECENT FABRICATION

Finally, Cole contends that these latter statements are inadmissible as rebuttal to an implied charge of recent fabrication under A.R.E. 801(d)(1)(ii), which provides as follows:

> (d)   Statememnts Which Are Not Hearsay. A statement is not hearsay if:

(1)   Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . (ii) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive . . . .

This exception is inapplicable simply because any motive that the victim might have had existed prior to her making her initial statements on the day following the incident. In *Brown* v. *State*, 262 Ark. 298, 556 S.W.2d 418 (1977), we stated that the principle applies when there is an express or implied charge that a witness has fabricated a statement that he is now making under oath. It is then proper, and not hearsay, to show that he made the same statement before the motive for fabrication came into existence.

Here, the principle simply has no application because the victim had the same motive for fabrication when she made the allegation as she had when she testified in the case. *See also Todd* v. *State*, 283 Ark. 492, 678 S.W.2d 345 (1984).

## CONCLUSION

Consequently, the three women's testimony that the victim told them on the Monday morning following the incident that Cole had come into her room and wanted her to play tricks, but had told her not to tell anyone, is admissible and corroborates the victim's testimony at trial that Cole anally penetrated her with his penis.

Arkansas Code Ann. § 5-14-105 (1987) addresses carnal abuse in the second degree and provides that "(a) A person commits carnal abuse in the second degree if he engages in sexual intercourse or deviate sexual activity with another person not his spouse who is incapable of consent because he is mentally defective or mentally incapacitated." Thus, we affirm Cole's conviction of carnal abuse in the second degree.

However, that portion of the program coordinator's testimony that the victim told her on Thursday that she had told Cole to stop, but he had "just kept on," is inadmissible as it was the result of statements she made some four days after the incident in question.

■ Arkansas Code Ann. § 5-14-103 (1987) addresses the crime of rape and provides that "(a) A person commits rape if he engages in sexual intercourse or deviate sexual activity with another person: (1) By forcible compulsion . . . ." Since the program coordinator's testimony about what the victim told her on Thursday night is the only evidence in the record that purports to show that Cole used forcible compulsion in his actions, its inadmissibility forces us to reverse Cole's conviction of rape and remand to the trial court. *See Burks* v. *United States*, 437 U.S. 1 (1978); *Greene* v. *Massey*, 437 U.S. 19 (1978); and *United States* v. *Harmon*, 632 F.2d 812 (9th Cir. 1980).

Affirmed in part; reversed and remanded in part.

HAYS and BROWN, JJ., concur in part and dissent in part.

STEELE HAYS, Justice, concurring in part, dissenting in part. I share Judge Brown's views, with which I join. I would add that I am unable to agree with the majority in reversing the judgment of conviction for rape. I believe it is a mistake to require evidence that the victim remained in an agitated, excited state between the offending conduct and the excited utterance. That was not the rationale in *Smith* v. *State*, 303 Ark. 524, 798 S.W.2d 94 (1990). Nor does the majority opinion cite supporting authority for its position.

There was testimony that on Thursday the victim "burst" into the office of Ms. Roth and began telling the "rest of the story." Ms. Roth described the victim as "upset, speaking loudly, as she has a tendency to do when she is upset." Given the circumstances as a whole: the victim's confinement to an institutional setting without parental accessibility, the relationship between the victim and the appellant, and the obvious improbability that a seriously retarded victim would manufacture an accusation from the whole cloth, I disagree that it was error to permit the introduction of this evidence.

The majority's disparate treatment of the two utterances produces an anomaly—the victim's statements on Monday to the effect that certain sexual offenses were inflicted on her by the appellant are held to be reliable, yet her staements three days later, also emanating from an agitated state of mind, of additional sexual offenses by the same individual are held to be unreliable

only because of an interval of time. In *State v. Padilla*, 110 Wis.2d 414, 329 N.W.2d 263 (Ct. of App. 1982), a ten-year-old girl's statements to her mother three days after the incident were admitted as an excited utterance. The rationale of that decision is relevant to this case:

> A broad and liberal interpretation is given to what constitutes an excited utterance when applied to young children. *Love v. State*, 64 Wis.2d 432, 219 N.W.2d 294 (1974); *Betrang v. State*, 50 Wis.2d 702, 184 N.W.2d 867 (1971); *Bridges v. State*, 247 Wis. 350, 19 N.W.2d 529, reh'g denied, 247 Wis. 350, 19 N.W.2d 862 (1945). In this special circumstance, the court has held that stress is present even some time after the triggering event. This ascertainment of prolonged stress is born of three observations. First, a child is apt to repress the incident. *Bertrang*, 50 Wis.2d at 707-08, 184 N.W.2d at 870. Second, it is often unlikely that a child will report this kind of highly stressful incident to anyone but the mother. *Cf. Bridges v. State*, 247 Wis. 350, 19 N.W.2d 529 (1945). Third, the characteristics of young children work to produce declarations "free of conscious fabrication" for a longer period after the incident than with adults. It is unlikely a young child will review the incident and calculate the effect of the statement. *See United States v. Nick*, 604 F.2d 1199, 1204 (1979).

I would affirm the judgment of conviction.

ROBERT L. BROWN, Justice, concurring in part, dissenting in part. I concur with the affirmance of the carnal abuse conviction but would also affirm the rape conviction.

The crimes in question occurred in the Group Home, a residential center for persons with developmental disabilities, both physical and mental. The victim, who was age 23, was mentally impaired and had the mental capacity and academic ability of a child of between ages six and eleven. The appellant was married to one of the victim's supervisors at the Group Home — a person in charge — and would visit his wife at the home on weekends. The crimes occurred in the victim's private room on the premises.

The majority finds no "forcible compulsion" in this case due to the exclusion of hearsay statements of the victim made four days after the event which included an implied threat by the appellant. However, even if the stale statements are excluded, there is sufficient evidence of forcible *mental* compulsion to warrant a conviction. The victim was impaired and living in the Group Home's structured environment. This made her very vulnerable and susceptible to assault. Her assailant was in a position of some authority due to his marriage to the victim's supervisor, and he knew his victim to be susceptible to direction. There was more than mere trickery here. The appellant directed the victim on what to do. Under such circumstances and in such an environment, it is difficult for me to conclude that the victim was not compelled to yield to the appellant's sexual demands.

"Forcible compulsion" is defined as "physical force or a threat, express or implied, of death or physical injury to or kidnapping of any person." Ark. Code Ann § 5-14-101(2) (1987). We have held that where three girls stayed with their uncle after school each day and submitted to his sexual advances, their submission was induced by the forcible compulsion of the uncle who stood *in loco parentis* to the three girls. *Griswold* v. *State*, 290 Ark. 79, 716 S.W.2d 767 (1986). Admittedly, in *Griswold* there were threats by the uncle, but we quoted with approval from an Oregon case that placed great emphasis on the situation of the victim and her intelligence in discussing forcible compulsion:

> In the present case, the complaining witness was a young girl toward whom for more than 17 years the defendant had stood *in loco parentis* . . . . [A] reading of her testimony indicates that her intelligence is not of a very high order. Upon such a person the constraints of family discipline and the habit of obedience must necessarily exercise a considerable influence. How a more mature and more intelligent woman might have reacted under the circumstances is not in point . . . . Where submission of a girl is induced 'through the coercion of one whom she is accustomed to obey, such as a parent or one standing in loco parentis," the law is satisfied with less than a showing of the utmost physical resistance of which she was capable.

*State* v. *Risen*, 235 P.2d 764, 766 (Ore. 1951).

As the husband of the supervisor of a mentally impaired victim living in a structured environment, the appellant undoubtedly was perceived as an authority figure by the victim. This case is analogous to the situation in *State* v. *Risen*. Here, the intelligence of the victim was not of a very high order — somewhere between the ages of six and eleven. Here, also, though not a person, strictly speaking, who stood *in loco parentis* to the victim, the appellant was most assuredly in a position to control the victim's destiny through his wife. Under such circumstances I readily find forcible compulsion by implied threat.

HAYS, J., joins.