IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 98-10781

_____

ERNEST A. JANIK, JR., INDIVIDUALLY, ON
BEHALF OF GRANT JOSEPH JANIK, ON BEHALF OF
TYLER NEWMAN JANIK; LEAH EILEEN JANIK,
INDIVIDUALLY, ON BEHALF OF GRANT JOSEPH JANIK,
ON BEHALF OF TYLER NEWMAN JANIK,

Plaintiffs-Appellants,

versus

CITY OF DALLAS, TEXAS, ETC., ET AL,

Defendants,

CITY OF DALLAS, TEXAS, AN INCORPORATED MUNICIPALITY,

Defendant-Appellee.

_____

No. 98-11369

_____

ERNEST A. JANIK, JR., INDIVIDUALLY, ON
BEHALF OF GRANT JOSEPH JANIK, ON BEHALF OF
TYLER NEWMAN JANIK; LEAH EILEEN JANIK,
INDIVIDUALLY, ON BEHALF OF GRANT JOSEPH JANIK,
ON BEHALF OF TYLER NEWMAN JANIK,

Plaintiffs-Appellants,

versus

CITY OF DALLAS, TEXAS, ETC., ET AL,

Defendants,

AMICA MUTUAL INSURANCE CO., A RHODE ISLAND COMPANY;
INSURANCE ADJUSTMENT SERVICES OF TEXAS INC.,
A TEXAS CORPORATION, ALSO KNOWN AS INSURANCE
ADJUSTMENT SERVICES, ALSO KNOWN AS INSURANCE ADJUSTMENT
SERVICES INC; NOBEL SERVICE CORPORATION, A
DELAWARE CORPORATION, DOING BUSINESS AS
INSURANCE ADJUSTMENT SERVICES INC.,

Defendants-Appellees.

Appeals from the United States District Court for the
Northern District of Texas
3:95-CV-2594-D

July 6, 2000

Before GARWOOD, WIENER and DENNIS, Circuit Judges.[1]

GARWOOD, Circuit Judge:

Plaintiffs-appellants Ernest A. Janik, Jr., and Leah Eileen Janik, individually, and as next friends of their minor children, (collectively, the Janiks) filed suit against defendants-appellees the City of Dallas (the City), AMICA Mutual Insurance Co. (AMICA), IAS Claim Services, Inc., (IAS), and Nobel Service Corp. (Nobel)[2], seeking recovery for personal and property damage resulting from a sewage leak in the basement of a home they were leasing and from the handling of their insurance claims for losses caused by the sewage leak. The Janiks brought numerous claims against the City, against AMICA (the Janiks' insurer), and against IAS and Nobel (their insurance adjustors). In a

---

[1]Pursuant to 5th Cir. R. 47.5 the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

[2]The Janiks also named Floyd E. Meyers, Noble Holdings, Inc., and Insurance Adjustment Services of Texas, Inc., as defendants to this action. These defendants, however, were later dismissed from the case and are not parties to this appeal.

2

series of orders, the district court granted the City summary judgment on all claims against it.  With regard to AMICA, IAS, and Nobel, the district court granted summary judgment in their favor on several, but not all, of the Janiks' causes of action.  The Janiks' remaining claims against AMICA, IAS, and Nobel proceeded to trial, and the jury returned one liability question favorable to the Janiks against AMICA and IAS.  The district court, however, entered judgment in favor of AMICA and IAS on this jury finding, on the basis that there was no causal link between the sole liability finding and the damages finding.  The Janiks appeal on numerous points.  We affirm.

## Factual and Procedural History

In 1993, the Janiks lived in a home they were renting at 5509 Melshire Boulevard in Dallas, Texas.  On Sunday, October 31, 1993, the Janiks returned home from church to discover a liquid seeping into their home.  The Janiks attempted to clean their home and furnishings until discovering that the water was in fact untreated sewage water.  The Janiks then stayed with a neighbor for several days and soon moved to a different residence.

Seeking recovery for the property damage they suffered, the Janiks filed a claim under their renter's insurance policy with AMICA.  The day after discovering the sewage in their leased home, the Janiks orally notified AMICA of their claim.  AMICA then referred the claim to IAS, an independent claims adjuster, which opened a file on the Janiks' insurance claims on November 2, 1993.  Blackmon Mooring Steamatic (Blackmon Mooring) was retained to assist in the cleaning and moving of the Janiks' personal property.

3

Problems, unfortunately, soon arose. The Janiks considered AMICA and the claims adjustors to be engaging in deliberate delay and misrepresentation in processing the Janiks' claims. After several attempts by Blackmon Mooring to clean the personal property to the Janiks' satisfaction, AMICA decided to treat the Janiks' claim as a constructive total loss. IAS recommended that the Janiks receive $60,000-their policy limit. However, Blackmon Mooring was owed $15,900 for its cleaning and moving services, and a dispute arose over whether AMICA would pay the full $60,000 directly to the Janiks who would then pay Blackmon Mooring or issue two checks, one to the Janiks and the other to Blackmon Mooring. Eventually, the Janiks paid Blackmon Mooring themselves, and AMICA then released the entire $60,000 to the Janiks. In addition to the $60,000 payment for unscheduled personal property, AMICA also provided the Janiks $4,425 in coverage for additional living expenses. Although the Janiks do not contend that they received less coverage than they were entitled to under the policy, they do assert extra-contractual damages on various theories for alleged problems in the handling of their claim. The Janiks maintain that AMICA improperly delayed payment and improperly demanded proof of loss for payment, when the requirement for such proof was waived by AMICA.

On October 30, 1995, the Janiks filed suit against the City, alleging that the City was responsible for the sewerage leak and the resulting personal and property damages they suffered. The Janiks sought recovery under various theories, including trespass, conversion, nuisance, the Texas Constitution, the Federal Clean Water Act, 33 U.S.C. §§ 1251-1387 (CWA), the Texas Tort Claims Act, TEX. CIV. PRAC. & REM. CODE

4

ANN. §§ 101.001-101.109 (TTCA), the Texas Water Code, the Texas Solid Disposal Act, the Federal Declaratory Judgment Act, the Texas Declaratory Judgment Act, and violations of the Fourteenth Amendment of the United States Constitution. In their third amended complaint, the Janiks referenced the Resource Conservation and Recovery Act, 42 U.S.C. § 6972 (RCRA), as an alternative standard to support their claims under the CWA and state nuisance law. In a series of orders, the district court granted summary judgment in favor of the City on each claim asserted by the Janiks.

In the same complaint, the Janiks also named AMICA, IAS, and Nobel as defendants. The Janiks alleged *inter alia* that AMICA, IAS, and Nobel were liable for negligence, gross negligence, civil conspiracy, breach of fiduciary duty, breach of contract, quasi-contract, economic coercion and undue influence, violations of the Texas Deceptive Trade Practices Act (DTPA), violations of the Texas Uniform Fraudulent Transfer Act (TUFTA), and Texas Insurance Code violations, all in connection with their conduct and representations while adjusting the Janiks' insurance claims.[3] In a series of orders, the district court granted summary judgment in favor of AMICA on the following causes of action asserted by the Janiks: breach of fiduciary duty, quasi-contract, economic

---

[3] Against AMICA, the Janiks sought recovery for breach of contract, quasi-contract, DTPA violations, bad faith, negligence, gross negligence, economic coercion and undue influence, breach of fiduciary duty, the Texas Declaratory Judgment Act, the Federal Declaratory Judgment Act, civil conspiracy, unconscionability, and Texas Insurance Code violations. The claims against IAS were based upon negligence, gross negligence, economic coercion and undue influence, civil conspiracy, Texas Insurance Code violations, DTPA violations, and TUFTA violations. The Janiks sought recovery from Nobel for alleged TUFTA violations.

5

coercion and undue influence, and DTPA violations. The district court also granted IAS summary judgment on the Janiks' claims against it for civil conspiracy and economic coercion. The remaining claims were tried before a jury.

In August 1998, the Janiks remaining claims against AMICA, IAS, and Nobel proceeded to trial. At the close of the Janiks' case, the district court granted the defendants judgment on the Janiks' TUFTA claim. The district court then submitted the charge to the jury. The charge included the following liability issues: breach of contract, breach of the duty of good faith and fair dealing, negligence, gross negligence, negligent misrepresentation, civil conspiracy (as to AMICA), and nineteen insurance code violations. The jury answered "yes" to only one liability question, finding that AMICA and IAS violated the Texas Insurance Code by "[f]ailing to acknowledge with reasonable promptness pertinent communications with respect to claims arising under the policy." The jury made a damages finding of $2,815.73, representing the "out of pocket costs to plaintiffs to clean plaintiffs' consumer goods, other than those requiring special remediation efforts, as to those items that can be cleaned at a cost less than the cost of replacement." The jury apportioned responsibility for the loss at twenty-five percent to AMICA and seventy-five percent to IAS.

The district court, however, ruled that the jury's liability finding bore no relationship to the damages finding, specifically determining that there was no evidence of any out-of-pocket expenses incurred by the Janiks as a result of any delayed or inadequate communication by IAS and AMICA. Therefore, the district court entered

6

judgment in favor of AMICA and IAS.  The Janiks filed motions for reconsideration, new trial, and judgment as a matter of law.  The district court denied relief on these motions.  The Janiks then timely appealed.

## Discussion

On appeal, the Janiks assert that the district court erred in its disposition of their claims against the City, AMICA, IAS, and Noble. We affirm.

I.  The City

The district court granted the City's motions for summary judgment on all of the Janiks' claims.  On appeal, the Janiks contend that the district court committed error in four respects: (1) the district court's finding that the Janiks lacked Article III standing to assert a CWA claim; (2) the district court's decision that the Janiks had not stated a cause of action under the RCRA[4]; (3) the district court's conclusion that the City was not liable under the TTCA; and (4) the district court's determination that the City's actions did not constitute a nuisance and, therefore, did not result in an unconstitutional takings.  With regard to the first two issues, we agree

---

[4] On appeal, the Janiks contend that even if the district court correctly determined that they had failed to state a claim under the RCRA, the district court erred in refusing their motion to amend their pleadings pursuant to Rule 15 of the Federal Rules of Civil Procedure. Whether a party should be allowed to amend his pleadings is a decision left to the sound discretion of the district court. *See Moody v. FMC Corp.*, 995 F.2d 63, 65 (5th Cir. 1993).  The Janiks filed their Rule 15 motion to amend their pleadings to include an RCRA claim on May 22, 1998, more than two and one-half years after filing this action and after three previous amendments to their pleadings.  We cannot conclude that the district court abused its discretion in refusing the Janiks' request for a fourth amendment.

with the district court for the reasons stated in its orders, but write further to address the last two points raised by the Janiks.

We review a grant of summary judgment applying the same standard as the court below was required to apply. *See King v. Chide*, 974 F.2d 653, 655 (5th Cir. 1992). Summary judgment is proper when no issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See id*. at 656. Summary judgment evidence is viewed in the light most favorable to the nonmovant, in this case, the Janiks, and questions of law are reviewed *de novo*. *See id*. We may affirm a judgment on any basis raised below and supported by the record. *See Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998); *Davis v. Liberty Mut. Ins. Co.*, 525 F.2d 1204, 1207 (5th Cir. 1976); *see also* 10A CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 2716, at 290 (3d ed. 1998).

The Janiks' claims under nuisance and the TTCA are governed by Texas law. When adjudicating claims for which state law provides the rules of decision, we are bound to apply the law as interpreted by the state's highest court. *See Transcontinental Gas v. Transportation Ins. Co.*, 953 F.2d 985, 988 (5th Cir. 1992). If the state's highest court has not spoken on a particular issue, "it is the duty of the federal court to determine as best it can, what the highest court of the state would decide." *Id*. When making such a determination, we are bound by an intermediate state appellate court decision unless "convinced by other persuasive data that the highest court of the state would decide otherwise." *First Nat'l Bank of Durant v. Trans Terr Corp.*, 142 F.3d 802, 809 (5th Cir. 1998) (internal quotations and footnote omitted).

8

We, however, "will not expand state law beyond its presently existing boundaries." *Rubinstein v. Collins*, 20 F.3d 160, 172 (5th Cir. 1994) (footnote omitted).

We will first consider the Janiks' claim under the TTCA. Before the Texas legislature enacted the TTCA, liability against a municipality for the negligence of its representatives depended upon the classification of the activity at issue as either a governmental function or a proprietary function. *See Dilley v. City of Houston*, 222 S.W.2d 992, 993 (Tex. 1949). The former was shielded by sovereign immunity, while the latter was not. Under this scheme, if a municipality decided to provide sewer services, such services were classified as a proprietary function and, therefore, not afforded immunity. *See City of Tyler v. Likes*, 962 S.W.2d 489, 502 (Tex. 1997) ("Common law classified operation and maintenance of storm sewers as proprietary functions for which a municipality could be sued."). The TTCA, however, has largely done away with this classification system. Under the TTCA, sovereign immunity applies to negligence claims arising from a municipality's construction, operation, and maintenance of its sewer systems, except to the extent such immunity is waived by the TTCA. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021 (1997)[5]; *id*. § 101.0215.[6]

---

[5] Section 101.021 of the Texas Civil Practice & Remedies Code states as follows:

"A governmental unit in the state is liable for:
(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:
(A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

Accordingly, the TTCA narrowed municipal liability for damages caused by sewer systems. *City of Tyler*, 962 S.W.2d at 504. The Janiks alleged below, and reiterate on appeal, that the City's employees utilized motor-driven equipment when repairing a sewer line in their neighborhood. The Janiks contend that this equipment caused the sewage to seep into their home, thereby falling within the purview of section 101.021 of the TTCA (see note 5, *supra*). Under the TTCA, the City is immune from liability for the intentional torts of trespass and conversion asserted by the Janiks. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.057.[7] In response to an interrogatory, the Janiks stated that

---

        (B) the employee would be personally liable to the claimant according to Texas law; and
        (2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law."

[6] Section 101.0215 reads in pertinent part:

        "(a) A municipality is liable under this chapter for damages arising from its governmental functions, which are those functions that are enjoined on a municipality by law and are given it by the state as part of the state's sovereignty, to be exercised by the municipality in the interest of the general public, including but not limited to:
                . . .
                (9) sanitary and storm sewers;
                . . .
                (32) water and sewer service; and
                . . .."

[7] Section 101.057 provides as follows:

"This chapter does not apply to a claim:
        (1) based on an injury or death connected with any act or omission arising out of civil disobedience, riot, insurrection, or rebellion; or
        (2) arising out of assault, battery, false imprisonment, or any other intentional tort, including a tort involving disciplinary action by school authorities."

10

they "have not asserted any 'negligence' cause of action (or 'count') against the City of Dallas." As the City is immune for any intentional tort alleged against it and the Janiks have not sought recovery under a negligence theory, there is no remaining basis for liability under the TTCA. Therefore, the district court's grant of summary judgment in favor of the City on the Janiks' claim under the TTCA is affirmed.

The Janiks also sought recovery under a state-law takings claim, which they based on the doctrine of nuisance. Texas courts have split actionable nuisance into three categories: (1) the negligent invasion of another's interest; (2) the intentional invasion of another's interest; and (3) other conduct, culpable because it is abnormal and out of place in its surroundings, that invades another's interests. *See City of Tyler*, 962 S.W.2d at 503. As noted previously, the Janiks do not allege that the City acted negligently; therefore, the first category of nuisance is inapplicable. Although several pre-*City of Tyler* Texas courts of appeals' decisions suggest that the Janiks may recover under the abnormal and unusual condition branch of nuisance, *see Bible Baptist Church v. City of Cleburne*, 848 S.W.2d 826 (Tex. App.—Waco 1993, writ denied); *Shade v. City of Dallas*, 818 S.W.2d 578 (Tex. App.—Dallas 1991, no writ)[8], the Janiks' pleadings do not contain an allegation that any conduct by the City was "abnormal and out of place

---

[8] However, when considering a nuisance claim from excessive flooding caused by culverts and a drainage channel, the Texas Supreme Court focused on whether the culvert system was abnormal and out of place in its surroundings, not whether the resulting flood waters were. *See City of Tyler*, 962 S.W.2d at 504. Similarly, were we to reach the issue in the present case, we would need to address whether the sewer system itself, not the sewage that escaped from that system, was sufficiently abnormal and out of place in its surroundings. There does not appear adequate evidence that it was.

in its surroundings." Therefore, the Janiks are relegated to the second type of nuisance-intentional nuisance.

We again look to the Texas Supreme Court's decision in *City of Tyler* for guidance. Likes's home was damaged after a drainage channel and culverts owned by the City of Tyler flooded from heavy rains in the area, and Likes sought recovery from the City of Tyler under a nuisance theory. *See City of Tyler*, 962 S.W.2d at 503. The Texas Supreme Court held, as a matter of law, that the City of Tyler "did not intentionally do anything to increase the amount of water in the watershed in which Likes's home was located." *Id*. at 504. The court based this conclusion on the City of Tyler's having completed the culvert system before the Likes's home was built and not having made any improvements since then to increase the amount of water in the watershed where Likes's home was located. *See id*. It is undisputed that the City of Tyler intentionally constructed the culvert system and, therefore, the court's attention must have been focused on the intent to cause the flooding in the vicinity of Likes's home. In the present case, there is no allegation, nor any evidence, that the City intended to cause the sewage flooding in the vicinity of the Janiks' home. Accordingly, the Janiks' takings claim premised on nuisance fails.

In conclusion, the district court did not err in granting summary judgment in favor of the City.

II. Insurance Defendants

The Janiks raise several claims of error in the district court's disposition of their claims against AMICA, IAS, and Nobel. First, the Janiks appeal the district court's grant of partial summary judgment in

12

favor of AMICA, IAS, and Nobel on the following causes of action: economic coercion and undue influence, civil conspiracy, DTPA violations, breach of fiduciary duty, quasi-contract, and unconscionability. Second, the Janiks contend that the district court erred in declining to find manifest error in the jury's verdict, specifically, that the Janiks had not established their claims for breach of contract and violations of the Texas Insurance Code and greater damages than those awarded by the jury. Third, the Janiks assert that the district court erred granting judgment for IAS and AMICA on the jury's one liability finding in the Janiks' favor.[9] We hold that the district court did not err in any respect and rely on its reasoning in all matters save one. We briefly address the Janiks' contention that AMICA breached the policy by delaying payment of their claims until March 23, 1994, when the Janiks and AMICA had agreed on or around February 15, 1994 that AMICA would pay the Janiks $60,000 under the policy.

The Janiks alleged that AMICA breached the policy by failing to pay the Janiks' claim within the prescribed five-day period after giving notice of its intent to pay their claim. On or around February 15, 1994, AMICA and the Janiks reached an agreement whereby a total loss would be claimed on the Janiks' damaged personal property. Therefore,

---

[9] The Janiks raise two additional points of error. First, the Janiks claim that defense counsel engaged in improper jury argument when referring to the Janiks' attorney as stating that the case was about "invisible" harm when the Janiks' attorney in fact said "indivisible" harm. The resulting error, if any, was cured by the district court's instructions to the jury. Second, the Janiks complain that the district court's rulings on motions for summary judgment, new trial, and post-trial judgement as a matter of law collectively deprived them of their Seventh Amendment right to trial by jury. This claim is meritless.

13

the Janiks would receive payment for the policy limit of $60,000. However, Blackmon Mooring had submitted a bill for approximately $15,900 in expenses associated with the cleaning and moving of the Janiks' personal property. Blackmon Mooring's bill was to be paid out of the $60,000 fund, and the Janiks would receive the remaining $44,100. Confusion arose over whether or not the Janiks wanted AMICA to pay Blackmon Mooring directly. The Janiks eventually paid Blackmoon Mooring independently. Upon being informed of this payment, AMICA immediately sent the Janiks a check payable to them in the amount of $60,000. Even assuming *arguendo* that AMICA breached the policy by delaying payment to the Janiks[10], the Janiks have failed to establish any resulting damage from such breach. The Janiks received payment for the policy limit and, thus, the benefit of their bargain with AMICA. Under these facts, there can be no recovery for this alleged breach of the policy.

We find that the district court committed no error in its disposition of the Janiks' claims against AMICA, IAS, and Noble.

### Conclusion

The judgment of the district court is

AFFIRMED.

---

[10] AMICA argues that the uncertainty surrounding the method of paying Blackmon Mooring's bill mitigated its duty to pay within five days of notifying the Janiks that they would receive $60,000 in benefits under the policy. In support of its position, AMICA relies on a provision in the policy that states that, if payment of a claim requires performance of an act by the insured, payment of the claim must be made within five business days after the date such act is performed by the insured. As we conclude that the Janiks suffered no injury from this alleged breach, we need not address whether AMICA breached the policy.